[No. 45176-6-I.    Division One.    July 24, 2000.]

THE STATE OF WASHINGTON, *Appellant*, v. DAVID KANE,
*Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Brian M. McDonald* and *William M. Berg, Deputies,* for appellant.

*Dana M. Nelson* (of *Nielsen, Broman & Associates, P.L.L.C.*), for respondent.

BECKER, A.C.J. — A 1901 saving statute provides that a prosecution for a criminal offense must proceed under the criminal and penal statutes in effect at the time the offense was committed, unless the Legislature expresses a different intent in an amendatory or repealing act. Intending to increase the use of a treatment-oriented sentencing alternative for drug offenders, the Legislature amended the eligibility criteria with a statute that became effective on July 25, 1999. Because the 1999 amendment does not

express legislative intent to avoid the presumption of the saving statute, its effect is prospective only. We reverse the alternative sentence imposed on appellant Kane, and remand for resentencing under provisions in effect in June 1999 when he committed his offense.

The police discovered heroin and other contraband when they searched David Kane's residence on June 4, 1999. The State charged Kane on June 10 with possession of heroin with intent to deliver. Kane pleaded guilty to the charge against him on July 17, 1999. His standard sentence range was 43 to 57 months. At the sentencing hearing on August 17, 1999, the State recommended 43 months of total confinement, the low end of the standard range. Kane requested an alternative sentence under RCW 9.94A.120(6), the drug offender sentencing alternative (DOSA).

The Legislature enacted the DOSA five years ago as a treatment-oriented alternative to a standard range sentence of confinement. LAWS OF 1995, ch. 108. When an offender meets the statutory eligibility criteria for an alternative sentence, the trial court may impose a period of prison confinement that is only one-half of the standard range sentence and allow the offender to serve the other half in community custody while obtaining treatment for substance abuse. RCW 9.94A.120(6)(b). An offender who fails to complete the treatment program must return to total confinement to serve the other half of his sentence. RCW 9.94A.120(6)(c).

Under the DOSA statute as it existed when he committed his offense, Kane was not eligible for an alternative sentence because he had prior felony convictions. *See* former RCW 9.94A.120(6) (1998). But the Legislature amended the eligibility requirements for a DOSA sentence with a new statute having an effective date of July 25, 1999. LAWS OF 1999, ch. 197, § 4. Under the new statute, offenders with prior felony convictions are eligible to be considered for the alternative sentence if the prior convictions were not for violent or sex offenses. Kane was eligible for the alternative sentence if the new statute applied to him.

The State objected to Kane's request for an alternative sentence on the basis that the new statute did not apply to an offender whose crime was committed before the new statute's effective date. The trial court, however, determined that the new statute did apply to Kane, and imposed an alternative sentence consisting of a prison term of 25 months, to be followed by 25 months of community custody in compliance with a treatment program. The State appeals.

The central issue is the effect to be given to the general criminal prosecution saving statute, RCW 10.01.040. The saving statute presumptively saves all offenses already committed, and all penalties or forfeitures already incurred, from being affected by the amendment or repeal of a criminal or penal statute:

> No offense committed and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, unless a contrary intention is expressly declared in the repealing act, and no prosecution for any offense, or for the recovery of any penalty or forfeiture, pending at the time any statutory provision shall be repealed, whether such repeal be express or implied, shall be affected by such repeal, but the same shall proceed in all respects, as if such provision had not been repealed, unless a contrary intention is expressly declared in the repealing act. Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.

RCW 10.01.040.

The saving statute, enacted in 1901, departs from the common law. The common law regards a repealed statute as

if it had never existed except as to matters and transactions past and closed. Under the common law rule, all pending cases must be decided according to the state of the law "at the time of the decision." *State v. Zornes*, 78 Wn.2d 9, 12, 475 P.2d 109 (1970), *overruled by implication on other grounds* in *United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1978). In derogation of the common law, the saving statute preserves a potential or pending prosecution from being abated, perhaps inadvertently, by the Legislature's later act of repealing or amending the substantive law defining the offense or fixing ·its penalty. "Unless the later statutes clearly manifest a different intention, this general saving clause is deemed a part of every repealing statute as if expressly inserted therein, and hence renders unnecessary the incorporation of an individual saving clause in each statute which amends or repeals an existing penal statute." *State v. Hanlen*, 193 Wash. 494, 497, 76 P.2d 316 (1938); *see also State v. Walker*, 7 Wn. App. 878, 882, 503 P.2d 128 (1972). In the absence of a contrary expression from the Legislature, all crimes are to be prosecuted under the law existing at the time of their commission. *State v. Lorenzy*, 59 Wash. 308, 309, 109 P. 1064 (1910). It is not "essential to the life of the charge" that a criminal prosecution be already pending at the time a new amendatory or repealing act is enacted. *Lorenzy*, 59 Wash. at 309.

An example of the saving statute's early application in Washington is found in *State v. Hanover*, 55 Wash. 403, 104 P. 624 (1909). There, the State prosecuted the appellant for practicing medicine without a license. Between the date the offense was allegedly committed and the date of trial, the legislature passed a new act regulating the practice of medicine, and repealing prior acts. The new act did not contain a saving clause. The Supreme Court at first found the prosecution barred by the common law rule and issued an opinion reversing the conviction. Later, upon its own motion, the court reconsidered its decision in light of the

saving statute, and affirmed the conviction. *Hanover*, 55 Wash. at 406-07.

The statute saves only the substantive rights and liabilities of a repealed statute. *State v. Hodgson*, 108 Wn.2d 662, 669-70, 740 P.2d 848 (1987). Through the years, our appellate courts have consistently applied the saving statute to preserve prosecutions carried on under a repealed statute where the new statute does not indicate a contrary intent. *See, e.g., State v. Fenter*, 89 Wn.2d 57, 61-62, 569 P.2d 67 (1977); *State v. Weber*, 99 Wn.2d 158, 162-63, 659 P.2d 1102 (1983); *State v. Hernandez*, 20 Wn. App. 225, 226, 581 P.2d 157 (1978); *State v. Lombardo*, 32 Wn. App. 681, 649 P.2d 151 (1982).

Because RCW 10.01.040 is in derogation of the common law, it is strictly construed. *Zornes*, 78 Wn.2d at 13. The saving force of the statute is applied narrowly and its exception—"unless a contrary intention is expressly declared in the amendatory or repealing act"—is interpreted broadly. Thus, our Supreme Court has not insisted that a legislative intent to affect pending litigation be declared in express terms in a new statute. Rather, such intent need only be expressed in "words that fairly convey that intention." *Id.*; *State v. Grant*, 89 Wn.2d 678, 683, 575 P.2d 210 (1978). The Court has twice used the exception in the saving statute to allow new legislation to control pending criminal cases. In *State v. Zornes*, the court reversed and dismissed the defendants' convictions under the Narcotic Drug Act for possession of marijuana. While the appeals were pending, an amendment to the Act became effective stating that " *'the provisions of this chapter shall not ever be applicable to any form of cannabis.'* " *Zornes*, 78 Wn.2d at 11. From the words "not ever" preceding the words "be applicable," the Court found it could be reasonably inferred that the Legislature intended the amendment to apply to pending cases as well as those arising in the future. *Id.* at 13-14, 26. In *State v. Grant*, a new act provided that "intoxicated persons may not be subjected to criminal prosecution solely because of their consumption of alcoholic

beverages." *Grant*, 89 Wn.2d at 682. Finding this language to be a fair expression of legislative intent so as to avoid the default rule of the saving statute, the Supreme Court dismissed a charge of being intoxicated upon a public highway in a case that was pending before the new statute became effective. *Id.* at 684.

As a general rule, a statutory amendment, if it is clearly curative or remedial, will be applied retroactively even though it is completely silent as to legislative intent for retroactive application. *See, e.g., In re F.D. Processing*, 119 Wn.2d 452, 460, 832 P.2d 1303 (1992). But the 1999 amendment to the DOSA statute, because it establishes a penalty for a criminal offense, is subject to the saving statute. Therefore, if the amendment is silent as to intent for retroactive application, it will be given prospective application only. We need not attempt to determine whether the 1999 amendment is remedial or curative. As in *Zornes* and *Grant*, the question is whether the new statute contains words of intent that bring it within the exception to the saving statute.

The Legislature included the amendment that expands eligibility for the treatment alternative in a comprehensive bill, Engrossed Second Substitute House Bill 1006. The bill makes numerous other changes to various statutes having to do with sentencing of drug and alcohol offenders. Some of the other provisions in the bill, because they have the effect of increasing punishment, could not be applied retroactively. The State suggests that when some provisions in an act cannot be applied retroactively, the entire act must be given only prospective application. We, however, do not view as dispositive the fact that the Legislature chose to use a single bill to make various changes. Nothing prevented the Legislature, if it had been so inclined, from designating the expanded DOSA eligibility criteria as intended to be applied to offenses already committed, or to cases presently pending.

██ The only pertinent inquiry is whether any section of the bill contains words that fairly express the Legislature's intention to apply the new DOSA eligibility criteria to cases arising before July 25, 1999. The answer to that question is no. Unlike the enactments considered in *Zornes* and *Grant*, the 1999 legislation contains no language that even remotely suggests an intention to make the amended eligibility criteria available in cases arising before the effective date.

Kane does not try to demonstrate that the statute itself contains words that fairly convey that intention. He contends, however, that such an intent can be reasonably inferred from legislative materials describing the remedial concerns that prompted the amendment. A House bill report states, "The drug offender sentencing alternative is being underutilized. This bill would open up that program, which will have beneficial outcomes." H.B. Rep., SSHB 1006, at 7. A Senate Bill Report reflects a similar concern about underutilization of the sentencing alternative, and states, "This is a measure that gets tough on those who have a substance abuse problem, but also stops the revolving door to the prisons. It gives the offender the treatment he needs so he is less likely to offend again, while still requiring confinement." SSHB Rep. 1006, at 3.

Analysis of legislative intent regarding retroactivity is not ordinarily restricted to the statute's express language, and may be gleaned from other sources, including legislative history. *In re F.D. Processing*, 119 Wn.2d at 460. But here again, because the DOSA is a penal statute, the issue is whether the new statute's express language shows that the Legislature intended to depart from the presumption created by the saving statute. In this situation, legislative history materials cannot make up for the lack of words that fairly convey that intention in the 1999 amendatory statute itself. Therefore, while the bill reports do manifest a legislative purpose to increase, in various ways, intervention and treatment for offenders addicted to drugs, we must conclude that the intent of the Legislature is to accomplish

that purpose only with respect to defendants who offend after its effective date.

In using the new statute to sentence Kane, the trial court did not recognize the saving statute, RCW 10.01.040, as controlling. Instead, the court relied primarily on *State v. Heath*, 85 Wn.2d 196, 197, 532 P.2d 621 (1975)—a case that does not mention the saving statute. Heath had his license to drive revoked in August 1972 in a civil proceeding arising under the Washington Habitual Traffic Offenders Act. An amendment to that Act became effective in July 1973. The amendment allowed a trial court to stay a revocation order where the offense was the result of alcoholism for which the offender was obtaining treatment. *Heath*, 85 Wn.2d 197. Heath, who was in treatment, successfully petitioned the superior court for a stay of the revocation order. The Department of Motor Vehicles argued on appeal that the new statute should be given only prospective application, but the Supreme Court held that it was properly given retroactive application under general rules of statutory construction because it was "patently remedial." *Id*. at 198.

Because Washington's criminal prosecution savings statute, RCW 10.01.040, was not at issue in *Heath*, the court could decide to give retroactive application to the new act solely by looking to its remedial nature. For this reason, *Heath* is not on point in Kane's case. When a new statute repeals or amends a statute governed by the saving statute, it will be given prospective application even if it is patently remedial, unless it contains words that fairly convey a different intention.

As an "additional reason" for giving the new legislation retroactive effect in *Heath*, the court stated that when legislation reduces a penalty for a crime, the reduced penalty is generally applied in all pending cases, as the Legislature is presumed to have determined that no purpose would be served by imposing the older, harsher one. *Heath*, 85 Wn.2d at 198. This rule, the court stated, "has even been applied in the face of a statutory presumption against retroactivity." *Id*. at 198. The court's suggestion

that an ameliorative sentencing statute should be applied retroactively "in the face of" a saving statute was dicta because the presumption against retroactivity established by RCW 10.01.040 was not at issue in *Heath*. As dicta, it cannot override the holdings of *Zornes* and *Grant* and the earlier Supreme Court cases.

*Heath* cites cases from other states where courts have concluded that offenders may be given the benefit of a lighter punishment prescribed by an amendatory act passed after their offense was committed. *See In re Estrada*, 63 Cal. 2d 740, 745, 408 P.2d 948, 951-52, 48 Cal. Rptr. 172 (1965), and *People v. Oliver*, 1 N.Y.2d 152, 134 N.E.2d 197, 151 N.Y.S.2d 367 (1956), cited in *Heath*, 85 Wn.2d at 198. But the saving statutes discussed in these out-of-state cases are different from Washington's, and the holdings are inconsistent with Washington's precedent.

The *Oliver* court gave the following explanation why a reduction in a criminal penalty should be available in all pending cases, notwithstanding the presumption of a saving statute:

> A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance. As to a mitigation of penalties, then, it is safe to assume, as the modern rule does, that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts.

*Oliver*, 134 N.E.2d 202. The court concluded, "Whenever the Legislature alters existing law, a certain measure of inequality is bound to ensue. Where the change is ameliorative and reflects a judgment that the earlier law was unduly harsh or unjust, a court should not withhold the benefits of the new statute to one tried after its passage, merely because it is powerless to extend them to those already convicted." *Id.* at 203.

While the sentiments expressed in *Oliver* are not irrational, they are insufficiently deferential to the legislative intent expressed by our saving statute. We find more persuasive the reasoning of the D.C. Court of Appeals in *Holiday v. United States*, 683 A.2d 61 (D.C. 1996), *cert. denied sub nom. Palmer v. United States*, 520 U.S. 1162, 117 S. Ct. 1349, 137 L. Ed. 2d 506 (1997). The federal appellate court rejected the *Oliver* court's assumption that a Legislature always intends to have a reduced penalty applied retroactively:

> We cannot agree, however, that *Oliver* expresses the only rational possibility. We cannot say that a legislature could not rationally conclude that the best approach would be a purely prospective one, so that all defendants who committed crimes before the statute became effective would be treated equally. Otherwise, sentencings could get caught up in manipulations with unfair results overall. Some convicted felons, for example, might be able to arrange sentencing delays to take advantage of the new sentencing scheme, whereas others could not achieve the same result before less sympathetic judges. But, more fundamentally, we see nothing irrational in a legislative conclusion that individuals should be punished in accordance with the sanctions in effect at the time the offense was committed, a viewpoint encompassed by the savings statutes themselves.

*Holiday*, 683 A.2d at 78-79. *See also Warden v. Marrero*, 417 U.S. 653, 660-61, 94 S. Ct. 2532, 41 L. Ed. 2d 383 (1974) (Petitioner, who had served one-third of his sentence, asked to be considered for parole for which he had become eligible under a new statute; held, the federal saving statute preserved the former parole statute, under which the prisoner was ineligible; the terms "penalty," "liability," and "forfeiture" in the saving statute apply to all forms of punishment, including parole ineligibility); *Moorehead v. Hunter*, 198 F.2d 52, 53 (10th Cir. 1952).

The fixing of legal punishments for criminal offenses is a legislative function. *State v. Ammons*, 105 Wn.2d 175, 180, 718 P.2d 796 (1986). The saving statute is a basic principle of construction the Legislature is entitled to rely

on when it makes changes to criminal and penal statutes. To ignore the presumption established by the saving statute is to introduce uncertainty into legislation and intrude into legislative prerogatives. For example, an amendatory statute that substitutes treatment for time spent in prison may well require fiscal or administrative adjustments. The Legislature may have decided that such changes should be phased in gradually as new cases arise. Or it may not have thought about timing at all. The Legislature is not obliged to express its thinking on such matters in its criminal and penal statutes. It is entitled to assume that the courts will enforce the saving statute and give prospective application to criminal and penal statutes that do not express a contrary intent.

The saving statute creates an easily administered, bright-line rule. It is not subject to alteration by delays that can occur between trial and sentencing. And as the court observed in *Holiday*, there is nothing fundamentally unfair in sentencing offenders in accordance with the law they presumably were aware of at the time they committed their offenses.

Any remaining strength to an argument based on *Oliver*, *Estrada*, or the dicta in *Heath* has been dispelled by a brief statute recently adopted by our Legislature. The statute adds to Chapter 9.94A RCW a section expressly "intended to clarify the applicability of statutes creating new sentencing alternatives or modifying the availability of existing alternatives." LAWS OF 2000, ch. 26, § 1. The new section states: "Any sentence imposed under this chapter [the Sentencing Reform Act] shall be determined in accordance with the law in effect when the current offense was committed." LAWS OF 2000, ch. 26, § 2. Although our holding in this case rests on the 1901 saving statute, it is also entirely consistent with the direction provided by the above statute.

We reverse the trial court's imposition of the alternative

sentence and remand for resentencing consistent with this opinion.

ELLINGTON and APPELWICK, JJ., concur.